**HARBOR FOOD PLAZA, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 45T10-9207-TA-00048.

Tax Court of Indiana.

Aug. 15, 1994.

Richard J. Lesniak, Lesniak & Ruff, East Chicago, for petitioner.

Pamela Carter, Atty. Gen., Ted Holaday, Thomas K. Caldwell, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Harbor Food Plaza, Inc. (Harbor Food), appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board). The State Board denied Harbor Food an adjustment for abnormal obsolescence on inventory and business depreciable property reported on Harbor Food's 1991 business tangible personal property tax return.

### ISSUES

The appeal raises two restated issues:

I. Whether the State Board erred in refusing to allow an abnormal obsolescence adjustment for Harbor Food's freezers.

II. Whether the State Board erred in refusing to allow an abnormal obsolescence adjustment for stolen or rotten inventory.

### FACTS

Harbor Food operates a grocery in East Chicago, Indiana, which it purchased in 1987. At that time, many of the grocery's capital assets were old and worn. Over the next three years, Harbor Food replaced four of its large food freezers. During the same period, Harbor Food maintains it lost some of its inventory to theft and spoilage.

### DISCUSSION AND DECISION
### STANDARD OF REVIEW

The State Board is accorded great deference when acting within the scope of its authority. *Centrium Group v. State Bd. of*

*Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243 (citing *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 399). Accordingly, this court will reverse a final determination by the State Board only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Hatcher v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 601 N.E.2d 19, 20 (quoting *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391). The taxpayer, like any other party appealing an administrative decision, bears the burden to show the State Board's assessment was inaccurate. *See Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913 (quoting *State Bd. of Tax Comm'rs v. Traylor* (1967), 141 Ind.App. 324, 228 N.E.2d 46, 52, *trans. denied*).

## I

Harbor Food bought the grocery in 1987. The equipment, particularly the freezers, was old, poorly functioning, and of antiquated design. Harbor Food therefore claimed a $31,500 adjustment for abnormal obsolescence on its Form 103 business tangible personal property tax return. The State Board reviewed the return pursuant to IND.CODE 6–1.1–14–10 and 6–1.1–14–11 and denied the adjustment.

The State Board's regulations define abnormal obsolescence as:

that obsolescence which occurs as a result of factors over which the taxpayer has no control and is unanticipated, unexpected, and cannot reasonably be foreseen by a prudent businessman prior to the occurrence. It is of a nonrecurring nature and includes unforeseen changes in market values, exceptional technological obsolescence, or destruction by catastrophe that has a direct effect upon the value of the personal property of the taxpayer at the tax situs in question on a going concern basis.

50 I.A.C. 4.2–9–3(a). The regulations provide an abnormal obsolescence adjustment both for depreciable business personal property, 50 I.A.C. 4.2–4–8, and for inventory. 50 I.A.C. 4.2–5–14.

■ This court has twice in the past been called on to review abnormal obsolescence of inventory claims. *See Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 568 N.E.2d 1116; *Don Medow Motors, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 545 N.E.2d 851. The adjustment is available for inventory only if the "value of [a taxpayer's] inventory has changed, the change in value was unforeseen, and the unforeseen change in value was the result of exceptional technological obsolescence or destruction by catastrophe." *Glass Wholesalers,* 568 N.E.2d at 1120 (citing *Don Medow Motors,* 545 N.E.2d at 852; 50 I.A.C. 4.1–3–9).[1] The abnormal obsolescence adjustment for depreciable business personal property has the same eligibility requirements as the adjustment for inventory. *See* 50 I.A.C. 4.2–4–8(c); 50 I.A.C. 4.2–5–14(c). Therefore, the analysis is the same under each adjustment.

■ Accordingly, to prevail on its claim concerning the freezers, it is incumbent on Harbor Food to show an unforeseen change in value due to exceptional technological obsolescence or destruction by catastrophe. Harbor Food, however, has not demonstrated exceptional technological obsolescence.[2] Instead, Harbor Food simply claims that its freezers were abnormally obsolete because they were old and in need of replacement and repair.

The problems with the freezers were apparent at the time of purchase. There was no unforeseen change in value. Moreover, the wear and tear the freezers experienced is the quintessence of business personal property "normal obsolescence" under 50 I.A.C. 4.2–9–2: "the anticipated or expected reduction in the value of business personal property that can be foreseen by a reasonable, prudent businessman when property is acquired and placed into service." There is no

---

1. 50 I.A.C. 4.1–3–9 is the predecessor to 50 I.A.C. 4.2–5–14.

2. Harbor Food does not claim it suffered abnormal obsolescence through catastrophic destruction.

adjustment for normal obsolescence under 50 I.A.C. 4.2–4–8 because normal obsolescence is included within business personal property depreciation under 50 I.A.C. 4.2–4–7. 50 I.A.C. 4.2–4–8(b).[3] The State Board was entirely within its discretion to refuse Harbor Food the abnormal obsolescence adjustment under 50 I.A.C. 4.2–4–8.

## II

 Harbor Food also claims it was entitled to a $61,000 adjustment for abnormal obsolescence of its inventory under 50 I.A.C. 4.2–5–14. Specifically, Harbor Food claims it suffered extensive losses of inventory due to theft and spoilage of meat and other foods. Assuming *arguendo* an abnormal obsolescence adjustment could be used to account for theft and spoilage in certain catastrophic circumstances, Harbor Food is nonetheless not entitled to an adjustment in the present case.

A Harbor Food officer told the State Board's hearing officer that the grocery suffered a great deal of theft, but offered no quantifying evidence of either the amount or cost of the stolen inventory. The only physical evidence Harbor Food presented consists of a half dozen receipts for the removal of spoiled food by a rendering company. Three of the receipts show meat was removed before the assessment date. The other three show meat was removed after the assessment date. .

None of the receipts show Harbor Food had rotten meat as of the assessment date, what the cost of any of the rotten meat might have been, or that any rotten meat was even assessed as inventory, and without this bare minimum evidence, the receipts are wholly insufficient. The abnormal obsolescence adjustment is strictly construed, 50 I.A.C. 4.2–4–8(c), and is available only for exceptional technological obsolescence or catastrophic destruction. *Glass Wholesalers*, 568 N.E.2d

at 1120. Harbor Food has shown neither, and there simply is nothing in the record to support a $61,000 abnormal obsolescence inventory adjustment.

### CONCLUSION

For all the foregoing reasons, the final determination of the State Board denying Harbor Food's requested abnormal obsolescence adjustments is AFFIRMED.

---

3. Harbor Food replaced four of the old freezers. The hearing officer deleted these old freezers from the depreciable asset pool, *see* 50 I.A.C. 4.2–4–7, at a rate of approximately 25% of the cost of the replacement freezers, thereby accounting both for depreciation and disposal.

The 25% figure was an estimated amount, used because Harbor Food did not present any evidence of the old freezers' costs. Harbor Food nonetheless argues the full cost of the old freezers should have been depreciated. Because Harbor Food did not present the State Board with any evidence of the full cost of the old freezers, it cannot now complain that the State Board failed to use the full cost.